UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ARMANDO RODRIGUEZ, </br></br> Plaintiff, </br> v. </br></br> BARRITA, INC. dba LA VICTORIA TAQUERIA; NICANDRO BARRITA; ENS ASSOCIATES INVESTMENTS, LLC; MASOUD SHAHIDI; AND DOES 1-10 INCLUSIVE </br></br> Defendants. | Case No.: 09-04057 RS-PSG </br></br> **ORDER GRANTING-IN-PART AND DENYING-IN-PART PLAINTIFF'S MOTION TO DEEM ADMITTED, OR IN THE ALTERNATIVE, COMPEL A RESPONSE TO PLAINTIFF'S REQUESTS FOR ADMISSION** </br></br> **(Re: Docket No. 60)** |

## I. INTRODUCTION

Plaintiff Armando Rodriguez ("Rodriguez") challenges the responses of Defendants Barrita, Inc. dba La Victoria Taqueria, Nicandro Barrita, ENS Associates Investments, LLC, Masoud Shahidi, and DOES 1-10 ("Defendants") to several requests for admission ("RFAs") and moves to deem these RFAs admitted under Fed. R. Civ. P. 36(a)(6). In the alternative, Rodriguez requests this court to order Defendants to respond to the RFAs within a short time frame. Having reviewed the papers and considered the arguments of counsel, Rodriguez's motion is GRANTED-IN-PART and DENIED-IN-PART.

## II. BACKGROUND

On September 1, 2009, Rodriguez filed a complaint against Defendants, the operators of a chain of taqueria restaurants and the owner of the building which houses one branch, for discrimination against him as a disabled wheelchair user.[1] The complaint stems from Rodriguez's visit to the La Victoria Taqueria located at 140 E. San Carlos Street, San Jose, California ("the restaurant") on November 7, 2008.[2] Rodriguez alleges that the restaurant violates the Americans with Disabilities Act and California civil rights laws because it is accessible only by stairs.[3] Rodriguez further alleges that the restroom inside the restaurant was inaccessible, despite displaying a wheelchair accessible symbol.[4]

On January 24, 2011, Rodriguez served his first set of RFAs on Defendants, including RFAs Numbers 29-54, a majority of which request Defendants to admit or deny various measurements in the restroom at the time of the incident.[5] For example, RFA No. 29 states: "Admit that at the time of the INCIDENT at the SUBJECT PROPERTY the clear width of the restroom door opening was 29-3/4", measured between the face of the door and the doorjamb on the opposite side."[6] RFA No. 35 requests Defendants to admit or deny that "at the time of the INCIDENT at the SUBJECT PROPERTY the restroom door landing extended less than 12" beyond the strike-edge (latch side) of the door on the push side of the door."[7] RFA No. 45 requests

---

[1] Pl.'s Mot. To Deem Admitted at 2. (Docket No. 60) ("Mot. To Deem Admitted").

[2] Def.'s Opp'n to Mot. To Deem Admitted at 2. (Docket No. 65) ("Opp'n to Mot. To Deem Admitted").

[3] Mot. To Deem Admitted at 2.

[4] Compl. ¶ 11. (Docket No. 1).

[5] McGuinness Decl. ¶ 2. The parties conducted a site inspection on February 10, 2010. Plaintiff's RFAs use the measurements made at that time. *Id.* at ¶ 15.

[6] *Id.* at Ex. 1. (Emphasis in original).

[7] *Id.* (Emphasis in original).

Case No.: 09-04057 PSG
ORDER, Page 2

Defendants to admit or deny whether "the counter surface of the lavatory was 35-1/2" above the finished floor."[8] Other RFAs involve measurements in other parts of the restaurant or do not involve any measurements whatsoever.[9]

Although Defendants' responses to the first set of RFAs were due on February 28, 2011, Rodriguez agreed to Defendants' two requests for an extension of time.[10] On March 15, 2011, Defendants served their responses.[11] Defendants' responses to each RFA were identical: "Responding Party objects to this request on the grounds that it is vague. Subject to, and without waiving the foregoing objections, Responding party's counsel has filed a motion to withdraw as counsel. Responding party's new counsel will file supplemental responses as appropriate."[12] On March 28, 2011, James Cracolice filed a motion to withdraw as Defendants' attorney.[13]

On March 16, 2011, Rodriguez served a second set of RFAs.[14] This second set is substantially similar to the first set, but requests Defendants to admit or deny current measurements and conditions of the restaurant.[15] For example, RFA No. 1 states: "Admit that, as of the time YOU serve YOUR answers to plaintiffs Requests for Admissions, Set Two, at the SUBJECT PROPERTY the clear width of the restroom door opening is 29-3/4", measured between the face of

---

[8] *Id.*

[9] *Id. See e.g.*, RFA No. 54 ("Admit that at the time of the INCIDENT at the SUBJECT PROPERTY the public side of the transaction counter where customers pay for their purchases was more than 34" high along its entire length."). (Emphasis in original). *See also* RFA No. 47 (Requesting defendants to admit or deny that the "hot water and drainpipes [in the restroom] under the lavatory were not insulated.").

[10] McGuinness Decl. ¶¶ 2, 3.

[11] *Id.* at ¶ 4.

[12] Mot. To Deem Admitted at 4.

[13] Mot. to Withdraw As Attorney. (Docket No. 34).

[14] McGuinness Decl. ¶ 7.

[15] *Id.* at Ex. 1.

Case No.: 09-04057 PSG
ORDER, Page 3

the door and the doorjamb on the opposite side."[16]  On April 18, 2011, Defendants served responses to the second set of RFAs.[17]  The response to each RFA was identical: "Responding Party objects to this request on the grounds that it is vague.  Subject to and without waiving the foregoing objections, Responding party's counsel has filed a motion to withdraw as counsel.  Responding party's new counsel will file supplemental responses as appropriate."[18]  On July 25, 2011, Defendants served supplemental responses to the disputed RFAs in set one and all of the RFAs in set two.[19]  The supplemental response to each RFA was the same:  "[Defendant] lacks sufficient information to admit or deny this Request because [Defendant] has not conducted these measurements.  [Defendant] will make the SUBJECT PROPERTY available at a reasonable date and time to permit Plaintiff to conduct the measurements."[20]

On August 3, 2011, counsel for all parties met and conferred by telephone regarding the disputed RFAs; however, a resolution was not reached.  The next day, Rodriguez's attorney informed defense counsel of Rodriguez's intent to file this motion if the defendants did not agree to make substantive admissions or denials by August 5, 2011.  Defense counsel confirmed that his position had not changed, and Rodriguez filed this motion.

### III. LEGAL STANDARD

Fed. R. Civ. P. 36 states that, "[a] party may serve on any other party a written request to admit [any fact]."[21]  Subsection (a)(4) requires one of three answers: (1) an admission; (2) a denial; or (3) a statement detailing why the answering party is unable to admit or deny the matter despite

---

[16] *Id.*  (Emphasis in original).

[17] *Id.* at ¶ 9.

[18] Mot. To Deem Admitted at 6.

[19] *Id.* at 4.

[20] *Id.*  (Emphasis in original).

[21] Fed. R. Civ. P. 36(a)(1)(a).

Case No.: 09-04057 PSG
ORDER, Page 4

making a reasonable inquiry.[22] "Even when a party's answer [fails to comply] with the literal requirements of the Rule, courts generally order an amended answer rather than deem the matter admitted."[23] However, the district court has the power to "control the discovery process [which] allows for the severe sanction of ordering a matter admitted when it has been demonstrated that a party has intentionally disregarded the obligations imposed by Rule 36(a)."[24]

## IV. DISCUSSION

In *Asea Inc. v. Southern Pacific Transp. Co.*, the Ninth Circuit considered whether an answering party's response can violate Fed. R. Civ. P. 36(a)(6) even if the response literally complies with the rule's requirements.[25] The court was not convinced that an answer "necessarily complies with Rule 36(a) merely because it includes a statement that the party has made reasonable inquiry and that the information necessary to admit or deny the matter is not readily obtainable by him."[26] Importantly, the court noted that "[t]he discovery process is subject to the overriding limitation of good faith," and that "[c]allous disregard of discovery responsibilities cannot be condoned."[27]

The court then held that if an answering party does not make a "reasonable inquiry" into the request for admission or if "readily available" information allows the answering party to admit or deny the matter, then the answering party does not comply with the requirements of Fed. R. Civ. P. 36(a), even if the party's answer literally complies with the rule.[28] The court further held that "[a]

---

[22] Fed. R. Civ. P. 36(a)(4).

[23] *Asea, Inc. v. Southern Pacific Transp. Co*, 669 F.2d 1242, 1246 (9th Cir. 1981).

[24] *Id.*

[25] *Id.* at 1247.

[26] *Id.* at 1246.

[27] *Id.*

[28] *Id.* at 1247.

Case No.: 09-04057 PSG
ORDER, Page 5

party requesting an admission may, if he feels these requirements have not been met, move to determine the sufficiency of the answer, to compel a proper response, or to have the matter ordered admitted."[29] While "the district court should ordinarily first order an amended answer, and deem the matter admitted only if a sufficient answer is not timely filed, this determination, like most involved in the oversight of discovery, is left to the sound discretion of the district judge."[30] The district court has the power to "control the discovery process [which] allows for the severe sanction of ordering a matter admitted when it has been demonstrated that a party has intentionally disregarded the obligations imposed by Rule 36(a)."[31]

In support of his motion, Rodriguez argues that Defendants' responses to both sets of RFAs were insufficient as a matter of law because the responses failed to admit or deny the requests.[32] Further, Rodriguez alleges that the defendants should have been able to admit or deny the RFAs because Defendants have complete control over the building where the incident took place. As a result, Rodriguez requests this court to deem both sets of RFAs admitted or, in the alternative, requests that Defendants be required to respond to the RFAs within a short time frame.[33]

Defendants respond that the answers to the RFAs were sufficient.[34] With respect to the first set of RFAs, Defendants assert that they did not conduct measurements of the restaurant on the date of the incident and, therefore, cannot reasonably obtain that information.[35] Furthermore, Defendants argue that both sets of RFAs use vague and ambiguous terminology, such as "face of

---

[29] *Id.*

[30] *Id.*

[31] *Id.*

[32] Mot. To Deem Admitted at 5-6.

[33] *Id.*

[34] Opp'n to Mot.To Deem Admitted at 4.

[35] *Id.*

Case No.: 09-04057 PSG
ORDER, Page 6

the door" and "doorjamb," and that they should not be required to conduct measurements to respond to Rodriguez's requests.[36] Defendants request this court to deem their answers to the RFAs sufficient. If the court finds that the Defendants' answers were insufficient, Defendants request the court to compel further responses, not deem the requests admitted.

A.   RESPONSES TO THE FIRST SET OF RFAs

Plaintiff served RFAs Number 29-54 on January 24, 2011 and generally requested Defendants to admit or deny the measurements in various areas of the restaurant on the day of the incident. Defendants argue that they could not admit or deny these RFAs because they did not conduct measurements in the restaurant on or about November 7, 2008. Defendants further argue that they cannot obtain this information through reasonable inquiry.

Defendants' argument is unpersuasive. Ordinarily, it might be unreasonable to assume that the restaurant has these various measurements for a point in time over two years earlier. But here, Defendants have admitted repeatedly that the measurements available today are no different than the measurements that would have been available on November 7, 2008. As a result, the measurements taken today would be accurate for the condition of the restaurant on the day of the incident. Yet, Defendants admit they have undertaken no efforts to collect these measurements. Under these circumstances, Defendants have not met their burden to conduct a reasonable investigation before making their claim that they cannot admit or deny the requested information.

B.   RESPONSES TO THE SECOND SET OF RFAs

The second set of RFAs is substantially similar to the first set, except that the measurements requested are as of the time that Defendants respond. In this case, Defendants assert that they should not have to conduct measurements in response to Rodriguez's RFAs. Furthermore,

---

[36] *Id.* In support of their position, Defendants rely on *L.H. v. Schwarzenegger*, Civ. No. S-06-2042 LKK GGH, 2008 W.L. 782734 (E.D. Cal. Mar. 20, 2008) and *Sperberg v. Firestone Tire & Rubber Co.* 61 F.R.D. 80 (N.D. Ohio 1973). Defendants' arguments are discussed in detail below.

Case No.: 09-04057 PSG
ORDER, Page 7

Defendants argue that the terminology used by Plaintiff to describe the starting and ending points for the measurements is vague. Defendants' arguments are without merit.

Initially, it is important to note that Defendants' reliance on *Sperberg* and *L.H.* is misplaced. *Sperberg* involved a patent dispute in which the alleged owner of a patent for a nondestructive method of determining tire life filed a motion ordering three tire companies to perform a technical tire test that went beyond the companies' normal daily operations.[37] The court denied the owner's motion because the tire companies are "not required to conduct any special testing operations devised by plaintiff."[38] In *L.H.*, a group of juvenile parolees brought a class action lawsuit against the state of California.[39] As part of their action, the parolees filed a motion to inspect and test the capabilities of various database systems used by the state.[40] The parolees then demanded a demonstration on how to use the systems.[41] The court denied the parolees' motions after ruling that the defendants were not required to perform demonstrations for an opposing party under Fed. R. Civ. P. 34.[42] The court further noted that Plaintiffs' motion was premature based on the progress of the case and the information Plaintiffs sought could be obtained through a deposition under Fed. R. Civ. R. 30.[43]

Unlike *Sperberg*, Rodriguez's RFAs do not require Defendants to conduct any "special testing operations" that he devised. Further, Rodriguez is not requesting Defendants conduct any technical or cumbersome task. Similarly, Rodriguez is not requesting Defendants to demonstrate

---

[37] *Sperberg*, 61 F.R.D. at 82.

[38] *Id.* at 83.

[39] *L.H.*, 2008 WL 782734.

[40] *Id.* at *5.

[41] *Id.*

[42] *Id.*

[43] *Id.*

Case No.: 09-04057 PSG
ORDER, Page 8

the use of a database system. Rodriguez's RFAs only require that Defendants conduct measurements on their own property and then admit or deny the measurements that Rodriguez obtained during the site visit on February 10, 2010.

Furthermore, *Asea* specifically holds that if an answering party does not make a "reasonable inquiry" into the request for admission then the party does not comply with the requirements of Fed. R. Civ. P. 36(a) even if the party's answer literally complies with the rule.[44] Measuring the distance between two objects or looking under the sink in the restroom to see whether pipes are insulated is precisely the type of "reasonable inquiry" that *Asea* requires the answering party to make.[45] Therefore, Defendants' insistence that they should not have to conduct the measurements in response to Plaintiff's RFAs is misguided.

Likewise, Defendants' argument that Plaintiff uses vague terminology to describe the starting and ending point of the measurements is flawed. A simple internet search yields the definition to almost every term Rodriguez uses in the RFAs. Further, there has been ample time for Defendants to request that Rodriguez specify in greater detail the objects referred to or define the terminology in the RFAs. Moreover, the parties conducted a site inspection in February of 2010, during which time Rodriguez obtained the measurements contained in the disputed RFAs. If Defendants were present during the site inspection, and the record does not indicate otherwise, then they would have knowledge regarding the measurements and points of reference used in the RFAs.

More importantly, not every RFA that Defendants dispute uses purportedly "vague" or "ambiguous" terminology. Some RFAs request the height of the counter where customers purchase food, while others request the height of the lavatory or napkin dispenser. Some RFAs

---

[44] *Asea*, 669 F.2d at 1247.

[45] *See e.g., Zamora v. D'Arrigo Bros. Co.*, C04-00047 JW, 2007 WL 806518, at *1-2 (N.D. Cal. Mar. 15, 2007) (holding that, in responding to Plaintiff's motion, it is reasonable for Defendants to tabulate its employees by gender, race, and/or national origin).

Case No.: 09-04057 PSG
ORDER, Page 9

simply require Defendants to look under the lavatory in the restroom to see whether the pipes are covered. Defendants' assertion that their responses are made after reasonable inquiry is not credible given their failure to acknowledge at least those RFAs that do not include purportedly vague terminology, as well as their lack of any attempt to clarify the perceived ambiguities.

In sum, Defendants' answers to the RFAs are not sufficient as a matter of law.

C. REMEDY

Although this court may in its discretion deem the RFAs admitted, this is a "severe sanction" not ordinarily granted.[46] In the absence of any evidence of intent by Defendants to deceive, the court will instead allow Defendants the opportunity to provide sufficient responses to the RFAs. At the same time, fact discovery is scheduled to close in just a few weeks, on September 30, 2011. Accordingly, IT IS HEREBY ORDERED that Defendants shall provide supplemental responses to both sets of Rodriguez's RFAs no later than September 16, 2011.

## V. CONCLUSION

Rodriguez's motion to deem admitted, or in the alternative, to compel a response within a short time frame is GRANTED-IN-PART and DENIED-IN-PART. Defendants shall supplement their RFA responses no later than September 16, 2011.

IT IS SO ORDERED.

Dated: September 8, 2011

*Paul S. Grewal*
PAUL S. GREWAL
United States Magistrate Judge

---

[46] *See Asea*, 669 F.2d at 1247.

Case No.: 09-04057 PSG
ORDER, Page 10