IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ARMANDO RODRIGUEZ,<br><br>Plaintiff,<br><br>v.<br><br>BARRITA, INC., dba LA VICTORIA TAQUERIA; NICANDRO BARRITA; ENS ASSOCIATES INVESTMENTS, LLC; MASOUD SHAHIDI; NICANDRO BARRITA; and DOES 1 through 10, inclusive,<br><br>Defendants. | No. C 09-04057 RS<br><br>**ORDER GRANTING LEAVE TO FILE MOTION FOR RECONSIDERATION, DENYING MOTION FOR RECONSIDERATION, AND RENDERING ADDITIONAL FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

Pursuant to Civil Local Rule 7-9, defendants request leave to file a motion for reconsideration of the prior order rendering findings of fact and conclusions of law. (ECF No. 250). Specifically, defendants request reconsideration because the order, which found that the City of San Jose Building Department apparently approved the prior owners' 1986 application for an "unreasonable hardship" exception from Title 24 disabled access requirements, concluded the building remains in violation of Title 24 due to the 1985 and 1986 alterations. Defendants contend that the Department's apparent approval of the 1986 unreasonable hardship application rendered the building compliant with Title 24, thereby precluding California Disabled Persons Act (CDPA) liability for then-existing barriers.

Because the order did not directly address the validity or effect of the City's apparent approval of the 1986 unreasonable hardship application, defendants' application for leave to file is

hereby granted. Civ. L. R. 7-9(b). For the following reasons, however, the motion for reconsideration is denied.[1]

## I. ADDITIONAL FINDINGS OF FACT

1. In a document dated May 5, 1986, the building's prior owners applied for an "unreasonable hardship" exception from Title 24 access requirements. (Pl. Exh. 67). The application is comprised of a form created by the City of San Jose Department of Private Development. The form prompts the applicant to provide information regarding the cost of complying with disabled access requirements.

2. Item 2 of the form requests the applicant list the cost of "all construction contemplated." The application provides two figures: (a) "$72,600," which was apparently crossed out, and (b) "$2,500." The figures appear to be in different handwriting. At trial, neither party argued the significance of the disparity between these figures. Nor did either party attempt to explain the apparent difference in handwriting.

3. Item 3(a) prompts, "The access feature increases the cost of construction by _____." The application lists a number that is not entirely discernible. This number also appears to have been crossed out.

4. The applicant's handwritten responses further provide that the "cost" of access features is $5,000 and the impact of proposed improvements on the feasibility of the project is "significant." When prompted to describe "[t]he accessibility feature(s) which would be gained or lost," the applicant wrote "wheelchair access." The applicant also describes the "type" of facility as "deli/office." The applicant states the facility is used by the general public for the purpose of "eating/visiting office."

5. The bottom half of the form provides a section to be filled out by the Building Department. That section includes several prompts. Many of these prompts were not completed. One such prompt provides:

---

[1] This order renders additional findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52. To the extent that any conclusions of law are inadvertently labeled as findings of fact (or vice versa), the findings and conclusions shall be considered "in [their] true light, regardless of the label that the . . . court may have placed on [them]." *Tri–Tron International v. Velto*, 525 F.2d 432, 435–36 (9th Cir. 1975).

> The determination of unreasonable hardship and this documentation do not allow a blanket exemption from the access requirements. The exception provided for by this form applies to the following item of the project: _____.

The field accompanying this prompt is blank. The form also instructs the Building Department to "check one" field indicating whether and how the applicant will provide equivalent facilitation "As Specified by Title 24." None of the accompanying fields were completed.

6. The form includes a signature indicating the application was approved. The date of the apparent approval is illegible.

7. Plaintiff's expert Jonathan Adler testified on the scope and likely cost of the 1986 alterations. Based on documents submitted to the Department, Adler opined that the 1986 construction project required work on more than 2,000 square feet of the subject property. Based on his expert opinion regarding mid-1980s construction prices, Adler estimated the project would have cost at least $120,000 in 1986. He opined that the $2,500 figure listed on the form is "unbelievable."

## II.  LEGAL STANDARD

Civil Local Rule 7-9 permits a party to move for reconsideration of any interlocutory order upon receiving leave from the court. Under the Rule, to bring such a motion, the moving party must show: (1) "[t]hat at the time of the motion for leave, a material difference in fact or law exists from that which was presented to the Court before entry of the interlocutory order for which reconsideration is sought"; (2) "[t]he emergence of new material facts or a change of law occurring after the time of such order"; or (3) "[a] manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order." Civ. L. R. 7-9(b).

## III.  DISCUSSION

A. <u>The Prior Order</u>

The prior order concluded that defendants violated state and federal disability law due to the existence of several barriers to disabled access at the La Victoria restaurant in San Jose, California.

1 One such barrier is the building's entrance, which is inaccessible to persons in wheelchairs.
2 Because the building was altered in 1985 and 1986, the order concluded that the building need
3 comply with then-applicable California disability access regulations.

In 1986, the building's prior owners applied for an "unreasonable hardship" exception to Title 24 disabled access requirements. The City of San Jose Building Department apparently granted the prior owners' request. At trial, defendants argued they had relied on the Department's approval of the hardship application. The order concluded that regardless of whether an occupant or owner of a building subject to Title 24 disabled access regulations can avoid CDPA liability by relying upon a municipal building department's approval of a prior owner's unreasonable hardship application, the evidence does not support a conclusion that defendants had actually relied on the Department's apparent approval.

Defendants, emphasizing the prior order's finding that the Department apparently approved the application, now contend the prior owners were excused from Title 24 compliance with respect to the 1985 and 1986 alterations. The prior order did not, however, address whether the 1986 unreasonable hardship exception was validly issued. Accordingly, defendant's application for leave to file a motion for reconsideration is granted.

B. Title 24 Unreasonable Hardship

California law permits a building department to grant an "unreasonable hardship" exception to disabled access building requirements under certain circumstances:

> In cases of . . . unreasonable hardship . . . a building department responsible for the enforcement of this part may grant exceptions from the literal requirements of the standards and specifications required by this part or permit the use of other methods or materials, but only when it is clearly evidenced that equivalent facilitation and protection are thereby secured.

Health & Safety C. § 19957.[2]  In 1986, when the prior owners filed the unreasonable hardship application, the City of San Jose Building Department was the local agency charged with enforcing

---

[2] Public accommodations constructed or altered after July 1, 1970 are subject to California Health & Safety Code and Government Code requirements for disabled access. *See Moeller v. Taco Bell Corp.*, 816 F. Supp. 2d 831, 847 (N.D. Cal. 2011).

1  Title 24. Under Title 24, the Department could find an unreasonable hardship exception under the
2  following circumstances:

> An unreasonable hardship exists when the enforcing agency finds that compliance with the building standard would make the specific work of the project affected by the building standard unfeasible, based upon an overall evaluation of the following factors:
>
> 1. The cost of providing access.
> 2. The cost of all construction contemplated.
> 3. The impact of proposed improvements on financial feasibility of the project.
> 4. The nature of the accessibility which would be gained or lost.
> 5. The nature of the use of the facility under construction and its availability to handicapped persons.

Cal. Code Regs., tit. 24 § 2-422(c) (1984); *see also* Disabled Access Regulations: Title 24 Interpretive Manual (August 16, 1984), *available at* ECF No. 232-3 ("It is the intent that in order to find unreasonable hardship the enforcing authority must make an evaluation based on the five criteria incorporated herewith and to document those findings.").

While the prior owners' 1986 application arguably shows the Department engaged in an "overall evaluation" of the five factors described in Section 2-422(c), there is no indication the agency properly considered the requirement that the building operator provide equivalent facilitation for persons with disabilities. The Health and Safety Code makes clear that a building department may grant an unreasonable hardship exemption "only when it is clearly evidenced that equivalent facilitation and protection are thereby secured."[3] Health & Safety C. § 19957. Yet despite being prompted by the form to indicate the status of equivalent facilitation "As Specified by Title 24," the

---

[3] Title 24 defines "equivalent facilitation" as "an alternate means of complying with the literal requirements of these standards and specifications that provides access in terms of the purpose of these standards and specifications." Bldg. C. 24-2 § 406(c) (1984). Both the Title 24 notes and Title 24 Interpretative Manual provide further guidance on the term. *See id.* n. 2 ("In determining equivalent facilitation, consideration shall be given to means that provide for the maximum independence of persons with disabilities while presenting the least risk of harm, injury or other hazard to such person or others."); Disabled Access Regulations: Title 24 Interpretive Manual (August 16, 1984), *available at* ECF No. 232-3 ("What is equivalent facilitation? That's the $64,000 question! It was the intent of the authors of these regulations to provide relief from strict literal enforcement of these regulations. Much in the same way that the uniform building code allows for alternate materials and methods of construction. [sic] Therefore, in the case of findings of unreasonable hardship equivalent facilitation represents another way of providing accessibility.").

1  Department left the accompanying fields blank.  Accordingly, there is no suggestion that the
2  Department assessed the propriety and necessity of equivalent facilitation.  Moreover, there is no
3  evidence that the prior owners provided equivalent facilitation of any sort.  Regardless of what
4  "equivalent facilitation" means in regards to the 1986 alterations of the subject property, in the
5  absence of evidence or argument that "equivalent facilitation" was actually provided, there is no
6  basis for determining that the requirement was satisfied.[4]  *See* Health & Safety C. § 19957 (hardship
7  exception allowed "*only* when it is *clearly evidenced* that equivalent facilitation and protection are
8  thereby secured") (emphasis added).

9  Additionally, it is unclear whether an "unreasonable hardship" exception was even available
10 following the 1986 alterations.  The Title 24 Interpretive Manual provides:

> "Do not forget, the exemption applies only to the path of travel of [sic] restrooms, drinking fountains and public phones serving the area, *the area of remodel is not exempted by this section*. [sic]"

Disabled Access Regulations: Title 24 Interpretive Manual (August 16, 1984), *available at* ECF No.
232-3.  Therefore, according to then-application regulations, a building department could not issue
an unreasonable hardship exception for the actual area of alteration.  After examining documents
apparently submitted to the Department in 1986, Adler opined that the "entire building" had been
altered, including the construction of a new stairway at the front entrance.  Rodriguez argues that
because the entire building, including the front stairway, was altered, a finding of "unreasonable
hardship" could not possibly excuse the prior owner's Title 24 obligations.  As discussed in the prior
order, the exact scope of the 1986 alterations is unclear.  Defendants offered no persuasive evidence,
however, that the alterations were less extensive than Adler indicated.  Considering all of the
evidence, it is more likely than not that at least the front stairway and first floor were altered in
1986, thereby precluding the valid issuance of an unreasonable hardship exception for those areas.[5]

Finally, it is unclear whether the City approved the application on the basis of the purported
$2,500 construction cost – a figure Adler opined is "unbelievable."  Rodriguez argues that if the

---

[4] Defendants' motion for reconsideration does not address the "equivalent facilitation" requirement. Similarly, defendants' trial brief offers no argument that equivalent facilitation was provided.

[5] As described above, the Department failed to explain the scope of the apparent exception.  *See* Additional Finding of Fact No. 5.

United States District Court / For the Northern District of California

applicant misrepresented the contemplated cost of construction, the resultant "exception" cannot be valid. While this order need not find whether the applicant misrepresented the scope or cost of the construction, the overall uncertainty surrounding the completeness of the document reinforces a conclusion that the unreasonable hardship exception was improvidently granted.

### C. Effect of 1986 Unreasonable Hardship Application

The Department's apparent approval of the 1986 hardship application was invalid.[6] Accordingly, the 1986 "unreasonable hardship" exception is void. *See Moeller v. Taco Bell Corp.*, 2007 WL 2301778 (N.D. Cal. 2007) ("Building departments and other administrative agencies are not lawmaking bodies and have no power to disregard or amend the ordinances which define their authority.") (citation, quotation marks, and alterations omitted); *City & County of San Francisco v. Padilla*, 23 Cal. App. 3d 388, 400 (Ct. App. 1972) ("An administrative agency . . . must act within the powers conferred upon it by law and may not validly act in excess of such powers. Accordingly, it is well settled that when an administrative agency acts in excess of, or in violation, of the powers conferred upon it, its action thus taken is void.") (citations and quotation marks omitted). The subject property is therefore in violation of Title 24 disability access regulations.

### IV. CONCLUSION

For the foregoing reasons, defendants' application for leave to file a motion for reconsideration is GRANTED and defendants' motion for reconsideration is DENIED.

IT IS SO ORDERED.

Dated: 1/24/14

_____
RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE

---

[6] Rodriguez contends defendants have the burden to prove the exception was validly granted. Defendants likely disagree. Here, it is not critical to ascertain where the burden rests because even if plaintiff holds the burdens of production and persuasion, Rodriguez has produced adequate evidence and made sufficient argument to establish that the 1986 unreasonable hardship exception is invalid.